ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
FEB 23 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 07-00001 |
| Plaintiff, ) | |
| vs. ) | **UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS** |
| RYAN JASON WALL, ) | |
| Defendant. ) | |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and moves this Honorable Court to deny the defendant's Motion to Suppress.

This Opposition is based on the following memorandum of points and authorities, the record in the Court's file, and any oral arguments or evidence that may be produced at the hearing in this matter.

Respectfully submitted this 23rd day of February, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

On December 29, 2006, Guam Task Force Officer Marvin R. Desamito received an anonymous telephone call informing him that a DHL package would be sent to Guam which contained the drug "ice". The caller provided Officer Desamito with the DHL Tracking Number 8329724874. The caller stated that the package was originally sent from Fife, Washington on December 15, 2006. The Drug Enforcement Agents verified the package number with the DHL Website and a lookout was placed for the DHL package.

On December 29, 2006, Task Force Officer Marvin Desamito and Michael C. Perkins met with the anonymous caller in the Hagatna, Guam area. The confidential informant stated that the DHL package was sent to a person identified as RYAN JASON WALL, and that RYAN JASON WALL had previously received a DHL package on December 6, 2006, and that approximately five ounces of "ice" was concealed in that package.

On December 29, 2006, Task Force Officer Desmito conducted a criminal history check and learned that Wall is currently on probation for charges of Assault and Family Violence, Failure to Appear, Violation of a Court Order, and Assault. An Arrest Warrant was issued for Wall in Pierce County, Tacoma, Washington.

On December 30, 2006, Office Perkins learned that the DHL package had arrived on Guam at 8:00 a.m. Notably, the airline manifest omitted the DHL package from its list, and the package had been routed from Fife, Washington to Los Angeles, California, to China and then to Guam. A cursory sniff was made by the Guam Customs and Quarantine Drug Detector Dogs with negative results.

The DHL package was X-rayed at the Guam International Airport and the contents were noted to contain an organic substance consistent with illegal contraband. The X-Ray showed items that were suspicious in nature and common with the importation of drugs. The package

2

was secured in the Customs Enforcement Team vault at the Guam International Airport. The Agents then requested for and obtained a Search Warrant from the Magistrate Judge Joaquin V.E. Manibusan on December 30, 2006.

On December 31, 2006, the Warrant was executed and the DHL package opened at the Guam Resident Office. The DHL package was identified as 832 9724 874. (Exhibit 1) The package was wrapped in brown paper with clear packaging tape on the ends. The package was addressed as follows:

From: D.W. Duley, 4333 S. Yakima, Tac. Wa. 98414.

To: Ryan Wall, 3221 Pale San Vitores Road, Tumon, Guam (See Exhibit 2)

Inside the United States Postal Service box were two separate containers, one a silver metallic wrapped box, the other a gold metallic wrapped box. Both packages had metallic ribbon, newspaper, and two peppermint candy canes attached to the exterior. (See Exhibit 3) The wrapped packages were opened. The package contained a box which held a clear plastic case containing a pink colored liquid shower gel in a bottle and a rectangular clear plastic box containing colored crystals. (Exhibit 4) The other package held three body image liquid products contained in a plastic case .(Exhibit 5) The package also included Energizer batteries and a penny.

The contents were field tested with the Marquis Reagent kit and tested positive for methamphetamine. (Exhibit 6 & 7) The packages contained 118.9 gross grams of crystal methamphetamine. (Exhibit 8 & 9).

The methamphetamine was replaced with a "sham" product and placed back into the mail delivery system. The defendant RYAN JASON WALL drove up to the DHL Office, entered the building, provided the tracking number and received the package. He was arrested.

On January 3, 2007, a Complaint was filed charging Defendant with the offense of Attempted Possession of Methamphetamine Hydrochloride With Intent to Distribute in violation of 21 U.S.C. Section 841(a)(1) and 846. The Complaint alleges the following:

On or about January 2, 2006, in the District of Guam, the defendant RYAN JASON WALL, did unlawfully and knowingly attempt to possess with intent to distribute approximately 118.9 gross grams, gross weight, of methamphetamine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## ARGUMENT

### I. SUFFICIENT PROBABLE CAUSE EXISTED FOR ISSUANCE OF THE SEARCH WARRANT. THE EVIDENCE SHOULD NOT BE SUPPRESSED.

Defendant Wall argues that the Government lacked a basis for the search warrant because the drug detector dog sniff was negative for the presence of drugs. However, several facts support the finding of probable cause for the warrant.

For a search warrant to issue, the Fourth Amendment requires that there be "probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place" Illinois v. Gates, 462 U.S. 213, 238 (1983)..

Several facts support the finding of probable cause. First, the Agents received an anonymous tip that drugs would be headed to Guam. The tip included the origin, destination, and DHL number. Second, the Agents met eye-to-eye with the confidential informant who provided the name of the defendant Ryan Jason Wall. The informant also provided historical information that the defendant had received a prior package of "ice". Third, a background check of the defendant revealed that he had an outstanding warrant in Washington as well as local charges. Fourth, the Agents learned that the DHL package matching the DHL number given by the informant had arrived on Guam. Fifth, the package was omitted from the airline manifest listing, typically each mailed or shipped item is identified on the airline manifest. Sixth, the DHL package was routed from Fife, Washington on a circuitous route headed to Guam. Seventh, the drug detector dog failed to alert to the package. Eighth, an x-ray of the package revealed that the package contained an organic substance consistent with the importation of drugs or controlled substance. These facts were presented to the Magistrate Judge who issued a warrant based on

4

probable cause.

When a court is considering whether an informant's tip is sufficient to support a finding or probable cause or reasonable suspicion, the court must employ a "totality of the circumstances approach" that takes into consideration the informant's veracity or reliability and his basis of knowledge. Illinois v. Gates, 462 U.S. 213, 238 (1983). While the probable cause requirement for a warrant requires a "fair probability that contraband or evidence of a crime will be found," reasonable suspicion is less demanding and "can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325 (1990). "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors - quantity and quality - are considered in the totality of the circumstances. Id. "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." Id.

Courts look to several factors to determine the reliability of the informant's tip. First, a known informant's tip is thought to be more reliable than an anonymous informant's tip. See Florida v. J.L., 529 U.S. 266, 271 (2000); Adams v. Williams, 407 U.S. 143, 146-7 (1972). That is because an anonymous informant typically cannot be questioned about the basis for knowing the information or motive for providing the tip, nor can the anonymous informant be held accountable for providing false information in violation of the law. See J.L., 529 U.S. at 271; Adams, 407 U.S. at 146-7, Second, an informant with a proven track record of reliability is considered more reliable than an unproven informant. See Adams, 407 U.S. at 146-7. Third, the informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip - how the informant came to know the information. Spinelli v. United States, 393 U.S. 410 (1969), abrogated on other grounds by Gates, 462 U.S. at 238. Finally, a tip that provides predictive information about future events that is corroborated by police observation may be considered reliable, even if the tip comes from an anonymous source. White, 496 U.S. at 329-30,

5

Gates, 462 U.S. at 243-5, Draper v. United States, 358 U.S. 307, 313 (1959). Predictive information that reveals a detailed knowledge of an individual's intimate affairs is more reliable than predictive information could be observed by the general public, see White, 496 U.S. at 332; J.L., 529 U.S. at 272, and self-verifying detail is considerably more valuable if it relates to suspicious activities than if it relates to innocent activities. Gates, 462 U.S. at 245.

Here, several indicia of reliability are present to support the informant's tip. The informant in this case made himself known to the DEA Task Force Agents, and the agents met the informant in a face to face encounter. Face-to-face encounter significantly bolsters reliability because officers "may perceive and evaluate personally an informant's mannerisms, expressions, and tone of voice" and because the informant knows that he may be tracked down and held accountable for false assertions. United States v. Romain, 393 F.3d 63 (1st Cir. 2004). The informant had no motive to fabricate the tip and could presumably have been held accountable if his information proved to be false. The informant had personal knowledge of Wall's activities because he had dealings with him in the past.

The informant in this case gave a description of Wall, predicted that Wall would receive a package through the DHL system on Guam, accurately stated that the package originated in Fife, Washington, and accurately stated the DHL routing number. The DEA agents were able to corroborate the informant's tip by contacting the DHL Office to verify that a package with this specific DHL number exists and is on its way to Guam. The informant in this case provided sufficient detail to dispel concerns that the tip was a hoax.

Defense argues that the fact that the drug detector dog failed to alert should be viewed as a lack of probable cause. However, masking the odor of drugs is a common technique used by drug couriers. See United States v. Brown, 33 F.3d 1014 (8th Cir. 1994) (United Parcel Service employee searched teddy bear for illegal drugs because it was wrapped in fabric softener sheets.) United States v. Koenig, 856 F.2d 843, 845 (7th Cir. 1988) (Federal Express employee investigated package smelling of laundry soap or fabric softener because of his knowledge of the

6

use of these products to mask the smell of cocaine. Courts have often recognized the strong connection between scented items and illegal drugs. Although there was a lack of an alert by the drug detector dog, there is still probable cause due to the tip by the confidential informant, the subsequent face to face interview, and the corroborating evidence that the package which was predicted to arrive on Guam did arrive on Guam in the DHL system.

Under the totality of the circumstances, the tip given by the confidential informant combined with the notable omission from the airline manifest, the origin, destination and DHL number on the package, the eye-to eye meeting with the confidential informant, the historical background of the defendant's activities, the background check which revealed the warrant, the arrival of the predicted package on Guam, the absence of an alert by the drug detector dog, and the x-ray which revealed an organic substance – these provide sufficient probable cause for the Search Warrant. Under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the package. The evidence should not be suppressed.

## CONCLUSION

Under the totality of the circumstances, there is ample and sufficient information known to the Agents to meet the probable cause standard for the Search Warrant. The articulable facts, taken together with rational inferences from those facts, justify the search warrant of the DHL package. The evidence should not be suppressed.

**Dated this 23rd day of February, 2007.**

            **LEONARDO M. RAPADAS**
            **United States Attorney**
            **Districts of Guam and CNMI**

**By:** _____
            **ROSETTA L. SAN NICOLAS**
            **Assistant U.S. Attorney**

7



















