ORIGINAL

LEONARDO M. RAPADAS
United States Attorney
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney
Sirena Plaza Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
MAR 16 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> RYAN JASON WALL, <br><br> Defendant. | CRIMINAL CASE NO. 07-00001 <br><br> **UNITED STATES' MEMORANDUM RE: SUPPRESSION HEARING** |

Comes now the plaintiff, United States of America, by and through its undersigned attorney, and provides this Memorandum Re: Suppression Hearing.

Respectfully submitted this 16th day of March, 2007.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

/s/ ROSETTA L. SAN NICOLAS
ROSETTA L. SAN NICOLAS
Assistant U.S. Attorney

## MEMORANDUM OF POINTS AND AUTHORITIES

On February 23, 2007, defense counsel filed a Motion to Suppress Physical Evidence wherein defense in his written document stated that "the search warrant lacked the requisite probable cause required by the Fourth Amendment." (Exhibit "1")

On March 15, 2007, the Government placed Task Force Agent M.R. Desamito on the stand to elicit facts pertaining to the Affidavit presented to the Magistrate Judge, Joaquin V.E. Manibusan. (Exhibit "2")

During the direct examination, it was agreed that the Government would be confined to the "four corners" of the affidavit. Defense then sought exclusion the Case Agent M.C. Perkins because he would like to "impeach Desamito with Perkins" and "impeach Perkins with Desamito". During cross examination, defense asked Agent Desamito whether he signed the affidavit "under penalty of perjury" noting that he had "taken an oath" before presenting the the affidavit to the Magistrate Judge. Defense then brought up facts **subsequent** to the issuance of the search warrant asking Agent Desamito "would it surprise you that the dog sniff was positive?", "would it surprise you that three people were there when the x-ray was conducted?", "that a hairbrush and battery were noted in a later custody receipt", "What's suspicious about a hairbrush" and questions along this line. Defense's line of questioning had the tenor of impeaching an Agent based on falsehood or reckless disregard for the truth.

The hearing was continued to Monday, April 19, 2007 at 9:30 a.m..

The Government presents this Memorandum to the Court to clarify the type of hearing for which the defendant has provided notice.

Defense has noticed a typical "four corners" probable cause review of the affidavit. However the line of questioning challenges falsehood or reckless disregard for the truth – changing a noticed four corners probable cause determination into an unnoticed, unapproved Franks hearing without a proper showing.

2

Determination of the issue of probable cause is limited to review of the four corners of the probable cause affidavit itself. In its review of the magistrate's finding of probable cause, the reviewing court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow a magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a reasonable probability that contraband will be found in a particular place. "And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for concluding that probable cause existed." Illinois v. Gates, 462 U.S. 213 (1983).

The parties must confine themselves to the four corners of the affidavit unless there are contentions of deliberate falsehood. A defendant may go outside of the affidavit to challenge probable cause to issue a search warrant **only** by making a substantial showing that the affidavit contains deliberate falsehoods or reckless disregard for the truth, without which the affidavit would be an insufficient basis for the warrant. Franks v. Delaware, 438 U.S. 154 (1978).

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court has held "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding or probable cause, no hearing is required. On

3

the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments to his hearing. Whether he will prevail at that hearing is, of course, another issue."

  **Dated this  day of March, 2007.**

          **LEONARDO M. RAPADAS**
         United States Attorney
         Districts of Guam and CNMI

       By: _____
         **ROSETTA L. SAN NICOLAS**
         Assistant U.S. Attorney

4

# AFFIDAVIT

I, MARVIN DESAMITO, being first duly sworn, do depose and say:

A. **Background of Affiant**

1. I am a Task Force Agent (TFA) of the United States Drug Enforcement Administration (DEA) Resident Agency, Hagåtña, Guam and have been so assigned since February 2006. I have been a Police Officer with the Guam Police Department for nine (9) years. During this time, I have completed training courses consisting of drug identification, methods and procedures used by drug organizations to import and distribute narcotics. I have participated in controlled deliveries, and negotiations to purchase illegal drugs, such as crystal methamphetamine a.k.a. ice." Additionally, I have participated in numerous arrests while assigned to DEA and GPD pertained to the distribution and importation of controlled substances. I have also assisted in the execution of numerous search warrants. I have been assigned to the investigation of narcotics violations as both case agent, seizing agent and surveillance agent.

2. I have had experience, training and communicating with law enforcement personnel who specialize in the area of documentation and detection of proceeds from drug trafficking. I have experience in debriefing defendants, informants and witnesses who have personal knowledge of drug organizations. Such individuals often have personal information as to the transportation and distribution of money and drugs in large-scale controlled substance distribution operations. I received from the Department of Justice, DEA Clandestine Laboratory Safety Awareness Training and First Responder Training. As part of the training I was instructed as to what types of precursors may be present at a Clandestine Laboratory.

GOVERNMENT EXHIBIT

3. I know from my training and experience that importers and distributors of controlled substances often keep ledger books, bank records, telephone records, receipts, airline tickets, drug customer lists, photos and other papers that relate to the importation, transportation, ordering, purchasing and the distribution of controlled substances and proceeds derived from said sales.

4. I know from my training and experience that it is common for large-scale drug dealers to secrete contraband, proceeds of drug sales and records of drug transactions in secure locations within their premises for ready access and to conceal them from law enforcement authorities. Also these items are often hidden in other parts of the property including sheds, garages, outer extensions, and vehicles. I also know that persons involved in large scale drug trafficking conceal in their premises caches of drugs, large amounts of currency, financial instruments, precious metals, jewelry, automobile titles, stereo and electronics equipment and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from engaging in narcotics trafficking activities. I also know the courts have recognized that cash wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

5. I also know from my training and experience that when drug traffickers amass large proceeds from the sale of drugs, that drug traffickers often attempt to legitimize these profits. That to accomplish this, drug traffickers utilize, but are not limited to, domestic and foreign banks and/or financial institutions and their attendant services, securities, cashier's checks,

2

money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.

6. I know from my training and experience that it is common practice for large-scale narcotics traffickers to travel to their purchase and distribution areas to facilitate their trafficking. After purchasing narcotics, these narcotics traffickers will transport or cause to be transported narcotics. The methods of transportation include, but are not limited to, commercial airlines, commercial, ocean going vessels, private automobiles, government and contract mail services. The methodology of the traffickers results in the maintenance of travel documents and Customs and Immigration forms of foreign countries.

7. It is my opinion, based on training and experience gained during the service of search warrants, that persons involved in the large-scale trafficking of narcotics almost always keep records of their narcotic transactions. The trafficking of narcotics generates huge sums of money that require the keeping of detailed records. On many occasions, I have observed handwritten notes which depict narcotic transactions in pay-and-owe records and in customer lists complete with telephone number and addresses. These records are kept by narcotics dealers whether or not the dealer is in actual possession of narcotics at any given moment.

8. It is also my opinion, based on training, experience, and observation, that the trafficking of large amounts of narcotics requires the cooperation and association of a number of people within a narcotics distribution organization. As a result, persons who traffic in narcotics will possess documents that identify other members of the organization, such as telephone books, address books, telephones bills, and documents containing lists of names.

9. In virtually all locations I have searched pursuant to a search warrant, I have personally observed utility bills pertaining to the location and personal letters addressed to occupants of the location. It is my opinion that within any location searched there will be keys that fit location locks, wallets, purses, diaries, and luggage tags, all of which contain in, or upon them, some personalization that tends to identify the owners thereof, thus, circumstantially identifying the occupant of the premises for the purpose of arrest, identification, and crime charging.

10. It is my experience that records and paraphernalia such as weighing devices, cutting material, and containers are permanently possessed by narcotic traffickers in much the same way a business will maintain records and tools of its trade, whether or not the business has a particular item in inventory on a given day.

11. I know from my training and experience that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product, and these traffickers usually maintain these photographs at their premises.

12. Based on my training and experience, drug traffickers commonly have in their possession, on their person, at their residences and/or their stash houses, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons. Said firearms are used to protect and secure a drug trafficker's property. Such property may include, but is not limited to narcotics, jewelry, narcotic paraphernalia, books, records and United States currency.

13. It is my opinion that the seizure of these items, despite any lapse of time between the events described and the anticipated search by this warrant, will provide evidence of the events

4

reported in this affidavit, and that the items have and will be used to aid in the commission of felony narcotics transactions

14. In my experience drug trafficking is a pyramid of several levels. The lowest level dealer typically sells to drug users, this dealer is supplied with drugs by a dealer on the next level. Frequently I have participated in controlled buys where I have ordered drugs from a dealer and I have observed that he has to go to his Source of Supply before he can consummate the transaction with my Cooperating Source.

B. **Facts and Cricumstances**

15. On 12/29/06, at about 6:00 p.m. while at the Guam Resident Office (GRO) Task Force Officer (TFO) Marvin R. Desamito received an anonymous telephone call about a DHL package containing the drug "ICE." The caller provided TFO Desamito with DHL tracking number 8329724874, the caller stated that the DHL package was originally sent from Fife Washington on 12/15/06. While still talking to the caller TFO Desamito made a check of the DHL tracking number via the DHL website, check of the tracking confirmed the statements made by anonymous caller. On 12/15/06 the DHL package departed the origin Fife Washington, on 12/27/06 the package had arrived at the DHL facility in Los Angeles, as of this date no further information was provided on web site. TFO Desamito contacted Customs Officer Peter Ofeciar and informed him of the DHL package, on the same date Customs Officer III (COIII) Ofeciar made arrangements with the Guam Customs and Quarantine Agency (GCQA) for a look out for the DHL package.

16. On 12/29/06, at about 7:00 p.m., TFO Desamito and TFO Michael C. Perkins met with the anonymous caller (hereinafter Source of Information( SOI)) in the Hagatna, Guam area.

5

The SOI stated that DHL package was being sent to a person he/she identified as Ryan Jason WALL, the SOI stated to TFO Desamito that WALL had received a DHL package on 12/06/06 containing bath products. The SOI stated that the drug "ICE" was concealed within the bath products, the SOI estimated the quantity of "ICE" in the package was about five (5) ounces.

17. On 12/29/06, at about 11:30 p.m. TFO Desamito conducted a criminal history check on Ryan Jason WALL, check indicated that WALL currently on probation for the charges of Assault and Family Violence (Guam), Failure to Appear, Violation of a Court Order, Assault and Arrest Warrant (Pierce County Tacoma, Washington). TFO Desamito made a check of the Arrest Warrant, according to Pierce County records the warrant for WALL is still valid. The criminal history check also indicated WALL's place of birth and Identification number from Washington State.

18. On 12/30/06, at about 2:00p.m. while at the GRO TFO Perkins made a check of the DHL tracking number, according to the DHL website the above mentioned package had arrived on Guam at 8:00 a.m. this date, TFO Perkins updated COIII Ofeciar as to the status of the package. At 3:40 p.m. COIII Ray Blas took custody of the package from a DHL employee identified as Jack Torres and confirmed that the package was not found on the airline manifest At 4:52 p.m., a cursory search using GCQA Drug Detector Dogs was performed resulting in negative results.

19. On 12/30/06, 5:40 p.m. COIII Joe Gange, the on-call Contraband Enforcement Team (CET), arrived and took custody of the package from COIII Blas. TFO Perkins and COIII Gange took the package to Customs Section at the Guam International Airport and x-rayed the package. The x-ray showed items that were suspicious in nature and common with drug importation. The package was then secured in the CET vault at the Guam International Airport.

6

Case 1:07-cr-00001   Document 16   Filed 03/16/2007   Page 10 of 19

20. Based on my training and experiences in past drug investigations, I believe that there is probable cause that the package described herein contains controlled substances.

MARVIN DESAMITO
Task Force Officer
Drug Enforcement Administration

7

## ATTACHMENT A

One (1) DHL mail package is further identified as:

DHL tracking number 8329724874

Sender:	Drive-n-Send
	4848 Pacific Ave.
	Tacoma, WA 98408


Receiver:	Ryan Wall
	801 Pale San Vitores Rd.
	Tumon, Guam 96913


The suspect envelope measures approximately 9 x 11 x 4 1/2 and weighs approximately three (3) pounds.

8

# United States District Court

## FOR THE DISTRICT OF GUAM

In the Matter of the Search of
(Name, address or brief description of the person or property to be searched))

ONE (1) DHL MAIL PARCEL BEARING THE PRINTED ADDRESS RYAN WALL, 801 PALE SAN VITORES RD., TUMON, GUAM 96913 (Further Described in Attachment A)

**SEARCH WARRANT**

CASE NUMBER:

TO: <u>ANY FEDERAL LAW ENFORCEMENT OFFICER</u> and any Authorized Officer of the United States

Affidavit(s) having been made before me by _____<u>MARVIN DESAMITO</u>_____ who has reason to
Affiant

believe that ☐ on the person of or ☑ on the premises known as (name, description and/or location)
Guam Customs and Quarantine, Property Evidence Custodian Office, Guam International Airport, Guam.

in the _____ District of GUAM _____ there is now concealed a certain person or property, namely (describe the person or property)
Controlled substance held in violation of Title 21, United States Code, Sections 841(a)(1), 846. Items of personal property tending to identify the person(s) ownership and control of the parcel which is subject to this warrant.
I am satisfied that the affidavit(s) and any record testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before _____1/10/2007_____
Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime—6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find reasonable cause has been established), and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written Inventory of the person or property seized and promptly return this warrant to __JOAQUIN V.E. MANIBUSAN, JR. Magistrate Judge__
as required by law.
U.S. Judge or Magistrate

12/31/2006 _____ at HAGATNA, GUAM
Date and Time Issued                                                                  City and State
JOAQUIN V.E. MANIBUSAN, JR.
U.S. Magistrate Judge
Name and Title of Judicial Officer                           Signature of Judicial Officer

055

## ATTACHMENT A

One (1) DHL mail package is further identified as:

DHL tracking number 8329724874

Sender:   Drive-n-Send
          4848 Pacific Ave.
          Tacoma, WA 98408

Receiver: Ryan Wall      1974
          801 Pale San Vitores Rd.
          Tumon, Guam 96913

The suspect envelope measures approximately 9 x 11 x 4 1/2 and weighs approximately three (3) pounds.

8

056

JOHN T. GORMAN
Federal Public Defender
District of Guam

RICHARD P. ARENS
Assistant Federal Public Defender
First Hawaiian Bank Building
400 Route 8, Suite 501
Mongmong, Guam 96910
Telephone:  (671) 472-7111
Facsimile:   (671) 472-7120

Attorney for Defendant
RYAN JASON WALL

**FILED**
DISTRICT COURT OF GUAM
FEB 23 2007
MARY L.M. MORAN
CLERK OF COURT

US Attorney's Office
Districts of Guam & NMI

FEB 23 2007
Time _____
Receiving name _____
Date keyed in Dbase  2/23/07
Entered into Dbase by: _____

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 07-00001 |
| Plaintiff, | ) MOTION TO SUPPRESS PHYSICAL<br>) EVIDENCE |
| vs. | ) |
| RYAN JASON WALL, | ) |
| Defendant. | ) |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE

COMES NOW the defendant, RYAN JASON WALL, through counsel, Richard P. Arens, Assistant Federal Public Defender, and moves this Honorable Court to suppress all physical evidence and the fruits thereof, along with any other physical evidence and statements, derived from the search of the DHL package executed December 31, 2006.

This motion is based upon the Fourth Amendment to the United States Constitution, the attached memorandum of law, counsel and any evidence which may be adduced at an evidentiary

**ORIGINAL**


GOVERNMENT EXHIBIT 2

hearing in this matter.

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

According to the discovery provided by the government, on December 29, 2006, DEA Task Force Officer Marvin R. Desamito received an anonymous telephone call regarding a DHL package containing crystal methamphetamine which had been shipped to Guam. The anonymous caller informed agents of the DHL tracking number, the date and place from which the package was sent and the alleged recipient. The package allegedly arrived on Guam on the morning of December 30, 2006. On the same day at approximately 4:52 p.m., a K-9 drug detector dog was utilized to conduct a drug detection test on the package. The dog sniff was negative for the presence of drugs. Agents next processed the package through the airport x-ray machine. According to the agents, the package contained suspicious items commonly used to import drugs.

On December 31, 2006, the government obtained and executed a search warrant on the package. Suspected methamphetamine was found in the package. The parcel was then repackaged with a substitute product and returned to the DHL office. On January 2, 2007, Ryan Wall was arrested when he picked up package.

Mr. Wall respectfully contends that the search was illegal based on the lack of probable cause supporting the warrant.

//

//

//

//

2

## II. ARGUMENT

**THERE WAS INSUFFICIENT PROBABLE CAUSE TO SUPPORT THE ISSUANCE OF A SEARCH WARRANT**

The Fourth Amendment of the United States Constitution guarantees "the right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures". U.S. Const. Amend IV. The government bears the burden of proving by a preponderance of the evidence that evidence derived from a Fourth Amendment violation should not be suppressed. See e.g,. United States v. Delgadillo-Velasquez, 856 F.2d 1292,1299-30 (9th Cir. 1986). Any evidence directly obtained from an illegal seizure is inadmissible under the "fruit of the poisonous tree" doctrine. See United States v. Hernandez, 55 F.3d 443, 447 (9th Cir. 1995).

Mr. Wall contends that the search warrant lacked the requisite probable cause required by the Fourth Amendment. Mr. Wall requests that all evidence obtained pursuant to the execution of the warrant be suppressed as well as any physical evidence or statements that were derived from the illegal search.

## III. CONCLUSION

For all the reasons mentioned above, it is respectfully requested that the evidence gathered as a result of the vehicle stop be suppressed.

DATED: Mongmong, Guam, February 22, 2007.

*[signature]*
RICHARD P. ARENS
Attorney for Defendant
RYAN JASON WALL

3

## CERTIFICATE OF SERVICE

I, RENATE A. DOEHL, hereby certify that a true and exact copy of the foregoing document was filed with U.S. District Court and electronically served by the U.S. District Court Clerk's Office to the following on February 23, 2007:

ROSETTA SAN NICOLAS
Assistant United States Attorney
Sirena Plaza
108 Hernan Cortez, Ste. 500
Hagatna, Guam  96910

Attorney for Plaintiff
UNITED STATES OF AMERICA

DATED: Mongmong, Guam, February 23, 2007.

_____
RENATE DOEHL
Operations Administrator

RICHARD P. ARENS
Attorney for Defendant
RYAN JASON WALL

## Catahay, Teresa (USAGU)

**From:** charles_white@gud.uscourts.gov
**Sent:** Friday, February 23, 2007 12:41 PM
**To:** charles_white@gud.uscourts.gov
**Subject:** Activity in Case 1:07-cr-00001 USA v. Wall "Motion to Suppress "

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

Civil/Criminal CM/ECF System

District Court of Guam

Notice of Electronic Filing

The following transaction was received from Federal Public Defender entered on 2/23/2007 at 12:41 PM CST and filed on 2/23/2007
**Case Name:** USA v. Wall
**Case Number:** 1:07-cr-1
**Filer:** Dft No. 1 - Ryan Jason Wall
**Document Number:** 11

**Docket Text:**
Motion to Suppress Physical Evidence by Ryan Jason Wall. (mlt, )

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** Q:\Input\CR Docs\CR-07-00001-FPD-MtnSupp.pdf
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1088563379 [Date=2/23/2007] [FileNumber=49236-0]

[cfd48dc76c9dd52c044315a1ecf4dab4947c8fb320a2cfc9125456c9ac5ee6e64bfa7
8ae0a9aabde25da2dd0ad2e75810241507c46d5f7aa07398b06a10914d8]]

**1:07-cr-1-1 Notice will be electronically mailed to:**

Federal Public Defender   john_t_gorman@fd.org, lita_arriola@fd.org; renate_doehl@fd.org; richard_arens@fd.org

Rosetta San Nicolas   rosetta.sannicolas@usdoj.gov, usagu.docket@usdoj.gov; noreen.soriano@usdoj.gov

United States Probation Office   operations@gup.uscourts.gov

**1:07-cr-1-1 Notice will be delivered by other means to:**