DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN JASON WALL,<br><br>Defendant. | Criminal Case No. 07-00001<br><br>**ORDER RE: MOTION TO SUPPRESS EVIDENCE AND STATEMENTS** |

The Defendant's Motion to Suppress came before this Court for an evidentiary hearing on March 19 and March 20, 2007. After hearing the testimony of witnesses and argument from counsel, the court **DENIED** the Defendant's motion. For the reasons discussed herein, the court sets forth more fully the reasons for **DENYING** the motion.

**I. FACTS**

On December 29, 2006, at approximately 6:00 p.m., DEA Task Force Officer Marvin R. Desamito ("Officer Desamito") received an anonymous telephone call regarding a DHL package containing crystal methamphetamine ("ice"). The caller ("informant") provided Officer Desamito with DHL Tracking Number 8329724874 and told the officer that on December 15, 2006, the package had been sent from Fife, Washington. While he was on the phone with the informant, Officer Desamito verified the package number with the DHL Website. He subsequently placed a "lookout" for the DHL package with Guam Customs and Quarantine Agency.

On that same date, Officer Desamito and Officer Michael C. Perkins ("Officers") met

1  with the informant in Hagåtña, Guam. The informant told the Officers that the package had been
2  sent to the Defendant, Ryan Jason Wall ("Defendant"). In addition, the informant told the
3  Officers that the Defendant had previously received a DHL package which had contained "ice"
4  that had been concealed in the package.

5  Thereafter, Officer Desamito conducted a criminal history check of the Defendant and
6  learned that he was currently on probation on Guam for charges of Assault and Family Violence,
7  Failure to Appear, Violation of a Court Order, and Assault. Additionally, an arrest warrant had
8  been issued for Mr. Wall in Tacoma, Washington.

9  On December 30, 2006, Officer Perkins learned that the DHL package had arrived on
10 Guam at 8:00 a.m. A cursory sniff of the package was made by Guam Customs and Quarantine
11 Drug Detector Dogs with negative results. The package was also X-rayed at the Guam
12 International Airport Authority ("GIAA") and the contents were noted to contain an organic
13 substance consistent with illegal contraband. The package was secured in the Customs
14 Enforcement Team vault at the GIAA. The Officers then requested for and obtained a search
15 warrant from the magistrate judge on December 31, 2006.

16 On December 31, 2006, the search warrant was executed and the DHL package was
17 opened at the Guam Resident Office. The DHL package was identified as 8329724874. *See*
18 Opposition, Exhibit 1 attached thereto. The contents were field tested with the Marquis Reagent
19 Kit and tested positive for methamphetamine. *See* Opposition, Exhibits 6 and 7. The packages
20 contained 118.9 gross grams of crystal methamphetamine. *See* Opposition, Exhibits 8 and 9.

21 The methamphetamine was replaced with a "sham" product and placed back into the mail
22 delivery system. The Defendant drove to the DHL Office, entered the building and provided the
23 tracking number and received the package. As he was leaving the building, he was arrested.
24 The Defendant now seeks the suppression of all the physical evidence and the fruits thereof,
25 along with any other physical evidence and statements, derived from the search of the DHL
26 package executed on December 31, 2006.

## II. DISCUSSION

28 Defendant specifically argues that the evidence seized from the Defendant should be

- 2 -

suppressed because there was no probable cause supporting the warrant. The Fourth Amendment restrains the government from performing "unreasonable searches and seizures." U.S. CONST. amend. IV. The touchstone in evaluating the permissibility of any search is "reasonableness." *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). In most cases, reasonableness requires a warrant and probable cause, supported by Oath or affirmation. *Id*. It is unnecessary that the evidence establishing probable cause reflect the direct personal observations of a law enforcement official. *United States v. Ventresca*, 380 U.S. 102, 108 (1965). The evidence may be based upon a confidential informant's tip, so long as the issuing judge is reasonably assured that the confidential informant was credible and the information was reliable. *Id.*

Probable cause exists when, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit. *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985). A magistrate judge's issuance of a warrant is reviewed for "clear error," and the warrant should be upheld as long as the magistrate judge had a "substantial basis for concluding that probable cause existed based on the totality of the circumstances." *United States v. Leon*, 468 U.S. 897, 914 (1984); *United States v. Mendonsa*, 989 F.2d 366, 368 (9th Cir. 1993). The task for the issuing magistrate or judge is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238.

This reviewing court is charged with making sure that the magistrate judge had a "substantial basis for" concluding that probable cause existed. *Gates*, 462 U.S. at 244-45. Looking at the affidavit and totality of the circumstances, the court finds there were enough facts contained in the affidavit that supported the magistrate judge's finding of probable cause for the warrant.[1]

---

[1] There were other facts presented in the affidavit that at the hearing were shown to be superfluous. For example, the affidavit stated that the package was routed from Fife, Washington on a circuitous route headed to Guam. At the hearing, however, testimony was presented that what

- 3 -

Officer Desamito received an anonymous tip that drugs would be sent to Guam. The tip included where the drugs were coming from, where they were to be sent, as well as a DHL tracking number. The Officers actually met the informant who provided the name of the Defendant as the intended recipient of the package. The Officers learned that the DHL package matching the DHL tracking number given by the informant had arrived on Guam. A background check of the Defendant revealed that he had an outstanding warrant in Washington and was on probation for local charges. An X-Ray of the package revealed that the package contained an organic substance consistent with the importation of drugs or controlled substance.[2]

Additionally, the informant in this case made himself[3] known to the Officers, and the Officers met the informant in person. An in person encounter significantly bolsters reliability because officers "may perceive and evaluate personally an informant's mannerisms, expressions, and tone of voice" and because the informant knows that he may be tracked down and held accountable for false assertions. *United States v. Romain*, 393 F.3d 63 (1st Cir. 2004).

> Courts look to several factors to determine the reliability of an informant's tip. First, a known informant's tip is thought to be more reliable than an anonymous informant's tip. That is because an anonymous informant typically cannot be questioned about the basis for knowing the information or motive for providing the tip, nor can the anonymous informant be held accountable for providing false information in violation of the law. Second, an informant with a proven track record of reliability is considered more reliable than an unproven informant. Third, the informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip--how the informant came to know the information. Finally, a tip that provides detailed predictive information about future events that is corroborated by police observation may be considered reliable, even if the tip comes from an anonymous source. Predictive information that reveals a detailed knowledge

---

route the package would be mailed were events beyond the Defendant's control. In other words, there was nothing suspicious about this event. In addition, there was a statement in the affidavit that the informant had told the Officers that the Defendant had received a prior package of "ice." Again, this fact was not corroborated. However, even disregarding these statements, there was still enough stated in the affidavit to establish probable cause.

[2]On page 6 of the affidavit Officer Desamito added a written notation that "[t]he CET determined the contents were organic in nature and through their training and experience consistent with contraband." This notation was added after the Magistrate Judge questioned the Officer regarding what was suspicious about the package.

[3]The gender of the informant was never revealed, however, for purposes of this order the informant will be referred to in the masculine pronoun.

> of an individual's intimate affairs is more reliable than predictive information that could be observed by the general public, and such self-verifying detail is considerably more valuable if it relates to suspicious activities than if it relates to innocent activities.

*United States v. Rowland*, 464 F.3d 899, 907-908 (9th Cir. 2006) (citations omitted).

The informant in this case gave a description of the Defendant, predicted that the Defendant would receive a package shipped by DHL, accurately stated that the package was coming from Fife, Washington, and provided the correct DHL routing number. The Officers were able to corroborate the informant's tip by contacting the DHL Office to verify that a package with the DHL routing number existed and was on its way to Guam. The informant provided sufficient detail to dispel concerns that the tip was a hoax.

Although the drug detector dog failed to alert to the drugs in the package, masking the odor of drugs is a common technique used by drug couriers. *See United States v. Brown*, 33 F.3d 1014 (8th Cir. 1994) (United Parcel Service employee searched teddy bear for illegal drugs because it was wrapped in fabric softner sheets); *U.S. v. Urrea-Leal,* 322 F.Supp.2d 1213, 1215 (D.Kan., 2004) (Trooper Morris has been involved in more than 50 interdiction stops in which drugs were seized; 30 to 35 of these were marijuana seizures. Training and experience has taught him that transporters of drugs often attempt to mask or cover up the odor of drugs with other odors); *United States v. Koenig*, 856 F.2d 843, 845 (7th Cir. 1988) (Federal Express employee investigated package smelling of laundry soap or fabric softner because of his knowledge of the use of these products to mask the smell of cocaine).

The court finds the combination of the verified information provided by the informant and the Controlled Enforcement Team's belief that the package contained a substance organic in nature that was believed to be consistent with contraband provided a substantial basis for the magistrate judge to issue the warrant. Under the totality of the circumstances, the magistrate judge made a sensible decision that a reasonable probability existed that contraband would be found within the DHL package. The magistrate judge's issuance of the warrant in this instance, was not "clear error." *United States v. Leon*, 468 U.S. 897, 914 (1984). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were

dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926. In this case there is no basis for such a determination.

### III. CONCLUSION

Based upon the foregoing, the court finds there was a substantial basis for the magistrate judge to issue the search warrant.[4] Accordingly, the Court **DENIES** the Defendant's motion.[5]

**IT IS SO ORDERED**.



/s/ Frances M. Tydingco-Gatewood
 Chief Judge
Dated: Mar 23, 2007

---

[4]The thorough scrutiny of Officer Desamito's affidavit in this case serves as a reminder to law enforcement officers who draft affidavits in their efforts to secure search warrants that they must strive to write clear and concise affidavits that provide sufficient information for a reviewing magistrate judge to determine if probable cause exists to justify a search. In many cases, as in this one, the affidavit will be a key piece of evidence in evaluating the issuing judge's probable cause determination. Taking the time to carefully draft an affidavit that fully sets out the basis for "probable cause" can often spare courts and parties the necessity of conducting mini-trials on the issue of "probable cause."

In this instance, the affidavit clearly could have been bolstered by including facts known by Officer Joseph Gange. For example, that based on his years of training and experience the contents of the package were packed in a manner consistent with drug packaging; the X-ray of the contents revealed organic material as organic matters will show up white in color in the X-ray. And, that when tipping the package, there appeared to be crystalline substances contained therein consistent with methamphetamine. The saving of a warrant should not rest upon the written notation of an officer who at the request of the magistrate judge is having to provide further explanation in support of the warrant.

[5]Although the Defendant's motion sought the suppression of all the physical evidence and the fruits thereof, along with any other physical evidence and statements, derived from the search of the DHL package executed on December 31, 2006, there was no evidence presented concerning any other physical evidence other than the DHL package or evidence of any statements made.